IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ZACHERY WILSON,    :
  Plaintiff,    :
           :
           :
vs.        :   CIVIL ACTION 14-337-CB-M
           :
EMILY WHITTLE, *et al.*,  :
  Defendants.    :
           :

REPORT AND RECOMMENDATION

This action under 42 U.S.C. § 1983 brought by an Alabama prison inmate, Zachery Wilson, proceeding *pro se* and *in forma pauperis,* was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Plaintiff's Complaint. (Doc. 1). After careful consideration of the Complaint and Plaintiff's eyewitness statement, it is recommended that Plaintiff's Eighth Amendment conditions of confinement, supervisory liability and Fourteenth Amendment due process claims be dismissed without prejudice as frivolous pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(i), and that process should issue on Plaintiff's Eighth Amendment medical care and excessive force claims.

I. Discussion

Because Plaintiff is a prisoner "seeking redress from a governmental entity," this Court is required to conduct a preliminary screening of his Complaint. *See* 28 U.S.C. § 1915A(a). In so doing, all factual allegations in the Complaint are accepted as true under the *pro se* pleading standard. *See Brown v. Johnson,* 387 F.3d 1344, 1347 (11th Cir. 2004). Such *pro se* pleadings as this one are also held to a less stringent standard than pleadings drafted by attorneys and will be liberally construed. *Harris v. McCray,* 2014 WL 4215576, *1 (M.D.Ga. Aug. 25, 2014)(*citing Tannenbaum v. U.S.,* 148 F.3d 1262, 1263 (11th Cir. 1998). However, this Court must dismiss a prisoner complaint after the initial review if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted;" or it "seeks monetary relief from a defendant who is immune from such relief." § 1915A(b); 28 U.S.C. § 1915(e)(2)(B).

A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." *Harris* at *1 (*citing Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir. 1993). A court may therefore properly dismiss a case *sua sponte* if it is found to be "without arguable merit either in law or fact." *Id.*

(*citing Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir. 2001).

When determining whether a complaint is frivolous, or fails to state a claim, the Court limits its consideration to the pleadings and exhibits attached thereto, and accepts as true the allegations set forth in the Complaint. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007); *see also Alba v. Montford,* 517 F.3d 1249, 1252 (11th Cir. 2008)("The standards governing dismissal under Rule 12(b)(6) apply to § 1915(e)(2)(B)(ii)"). "A complaint must contain sufficient factual matter, accepted as true," which raise the right to relief above a speculative level. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Twombly,* 550 U.S. at 570). "A formulaic recitation of the elements of a cause of action will not do." *Id.* However, a complaint should not be dismissed "simply because it strikes a savvy judge that actual proof of those facts is improbable." *Harris,* 2014 WL 4215576, at *2 (*citing Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007)(citation and quotation marks omitted)).

To state a claim for relief under § 1983, "a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or

omission was committed by a person acting under color of state law." *Id.* (*citing Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1581 (11th Cir. 1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *Id.; see also* § 1915A(b)(dictating that a complaint, or any portion thereof, that does not pass the standard in § 1915A "shall" be dismissed on preliminary review).

## II. Factual Allegations and Statement of Claims

As Defendants, Plaintiff names the following: Sergeant Emily Whittle ("Defendant Whittle"); Sergeant Franklin ("Defendant Franklin"); Correctional Officer Brian Ezell ("Defendant Ezell"); Warden Walter Meyers ("Defendant Meyers"); Captain Danny Fails ("Defendant Fails"); and Captain Ronzella Howard ("Defendant Howard"). Plaintiff files his Complaint based on a situation that occurred at Holman Prison[1] on June 25, 2014, during the six-hour period of 12:30 a.m. until 6:00 a.m., when the toilet in Plaintiff's segregation cell began to overflow "off and on

---

[1] Since filing the Complaint, Plaintiff has apparently been transferred to William E. Donaldson Correctional Facility. Despite his duty as required by this Court's Order to affirmatively inform the Court of his change of address (Doc. 5 at 2), Plaintiff only mentions in passing in a letter that he was transferred to Donaldson. (Doc. 6).

with 'FECES' water, together with the cell toilet above Plaintiff's cell!" (Doc. 1 at 4).

Plaintiff contends he notified the "A-Night Shift" of the overflowing "raw sewage" on several occasions, but the officers on the A-Night Shift "failed to assist [him] and provide [him] with cleaning chemicals and utensils to properly sanitize [his] cell of the 'raw sewage.'" Later that morning, Officer Leggett on the "B-Day Shift" showed "common courtesy to the plaintiff and opened [his] tray slot to give plaintiff a well need [sic] breath of fresh air!" (*Id.* at 8). Officer Leggett offered to inform the "segregation shift supervisor, Sergeant Emily Whittle, to come and assist Plaintiff with [the situation]. [] Plaintiff instantly told Officer Leggett to let Plaintiff speak with [another officer] . . . because Sergeant Whittle was given an order by . . . [Captain] Fails and Warden Myers to stay away from the Plaintiff [since Whittle previously wrote Plaintiff five back to back disciplinaries]." (*Id.*)

Plaintiff states that a few minutes later, Sergeant Whittle "accost [sic] Plaintiff [sic] cell with some kind of 'hook-knife' in one hand, and a can of mace in her other hand!" (*Id.*) Sergeant Whittle told Plaintiff to "close this mother f***ing tray door, I don't give a f*** if you

drown in that shit water!!!" (*Id.*) "Sergeant Whittle
started cutting, slicing and chopping at a tied down sock,
while the plaintiff's arms were still placed on his 'tray
slot!' In the process of [Sergeant] Whittle cutting,
slicing and chopping, the plaintiff was cut twice, once on
his right arm elbow and once on his left hand middle
finger! (*Id.* at 8-9). "Plaintiff stated to [Sergeant]
Whittle that he was only trying to clean and sanitize his
cell of the raw sewage, and that he didn't want any
problems! [Sergeant] Whittle [then said] 'Shut up, I don't
want to hear that bullshit.' Then [she] started spraying
the plaintiff with an exceeding amount of mace, not once,
but twice, directly into the plaintiff's face. . . ."
(Doc. 1 at 9). These allegations form the basis for
Plaintiff's excessive force claim against Defendant
Whittle.

Plaintiff was then taken to the segregation office by
Defendant Franklin who initially cuffed him to the front to
exit his cell, then cuffed Plaintiff to the back and
"started grabbing the chains of the handcuffs, yanking them
upward very aggressively, almost over [Plaintiff's head]."
(*Id.*). Plaintiff states that he immediately felt agonizing
and sharp pain to his right wrist as Defendant Franklin
told Plaintiff that he should "beat yo maf***in ass chump!"

(*Id.* at 10).  Plaintiff was then escorted to the Infirmary
by another officer where he received a body chart, mace
detox and treatment for his injuries.  (*Id.*).  Plaintiff
was taken back to his segregation cell and "given cleaning
supplies and utensils to properly sanitize his cell from
the raw sewage."  (*Id*).  These alleged actions form the
basis for Plaintiff's excessive force claim against
Defendant Franklin.

   After returning to his cell, Plaintiff requested
additional medical treatment to stop his elbow from
bleeding, but he claims his requests were denied and
ignored causing "mental and emotional damages that puts an
inmate in a substantial risk of his own safety."  (*Id.*).
Plaintiff eventually asked Officer Ezell to take him to the
Infirmary again, but Defendant Ezell informed Plaintiff
that he was instructed by Defendant Whittle to mace
Plaintiff if he did not put his arms inside the tray slot
so it could be secured. (*Id.*)  Plaintiff told Ezell that he
was badly bleeding and needed help, but Defendant Ezell
maced Plaintiff twice more with an "exceeding amount of
mace."  (*Id.*).  Plaintiff was eventually taken the
infirmary where he was detoxed from the mace and given
larger bandages and was added to the doctor's list for
swelling of his wrists.  Plaintiff contends that the

"exceeding mount of mace" used on him is excessive force by

on Defendant Ezell's part, and that Ezell denied him

adequate medical care.

Plaintiff attached to his Complaint the June 30, 2014,

"grievance complaint" he filed against Defendants.  (Doc. 1

at 18).  The grievance complaint states that his wounds

from being cut with a "hook-knife" are "constantly

draining," his right wrist was "severly [sic] injured" and

he has "received no X-ray or seen the doctor yet."  (*Id.*).

The grievance was responded to the next day on July 1,

2014, by an "HSA" whose signature is illegible, stating

"Mr. Wilson, you are currently on daily treatment until

your wound heals."  (*Id.*).  The grievance complaint also

indicates that on July 3, 2014, Plaintiff's status was

again checked by "L-13" quarters.  (*Id.*).

As for the supervisory liability claim against

Defendant Meyers, Plaintiff admits that Meyers "knowing

knew [sic] that he ignored the information of the clear

constitutional wrongdoing!  As opposed to participating in

the action himself." (*Id.* at 12).  Plaintiff further

alleges that Defendants Meyers, Howard and Fails should be

held liable for allowing Defendant Whittle to come around

Plaintiff when she had previously been given an order to

stay away from Plaintiff.  Plaintiff alleges that

Defendants Meyers, Howard and Fails further violated his due process rights be denying him the opportunity to speak to I&I investigators regarding the situation. (*Id.* at 14).

To bolster his excessive force claim against Defendant Whittle, Plaintiff submits a "Declaration of Eye Witness" from inmate Gerard McCree who states under oath that he saw Defendant Whittle "walking around going cell to cell with a box cutter in one of her hands. She went to the Plaintiff's cell . . . and cut the Plaintiff. The Plaintiff's cell was having problems with the toilet and [she] went down to the cell and cut the Plaintiff through the Plaintiff's tray door. The Plaintiff cried out, she cut me!!" (Doc. 6 at 2-3). Inmate McCree states that twenty-five minutes later Plaintiff was cuffed to the front through his tray slot, even though it is required that inmates be cuffed to the back, and Plaintiff "walked out of the unit." (*Id.* at 3).

For relief, Plaintiff requests "$100,000 in punitive damages from Whittle, Myers, Fails and Howard. Punitive damages of 75,000 from Ezell and Franklin. $30,000 in compensatory Damages from each individual, $10,000 in emotional damages from each individual." (*Id.* at 7).

A. Supervisory Liability

Liberally reviewing Plaintiff's Complaint, the Court finds the supervisory liability allegations against Defendant Meyers, Howard and Fails to be clearly baseless, indisputably meritless and alleged with no arguable basis in law or fact. *See Harris, supra* p. 2. It is apparent from Plaintiff's allegations that these three Defendants are each named as defendants because of their supervisory capacity, as opposed to actually participating in the events for which Plaintiff complains. Plaintiff even admits that Defendant Meyers merely "ignored the information of the clear constitutional wrongdoing! As opposed to participating in the action himself." (Doc. 1 at 12).

It is well established in this Circuit that supervisory officials are not liable [] for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir. 2003)(citations omitted). "The standard by which a supervisor is held liable in [his or] her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* To establish supervisory liability in this Circuit, a plaintiff must show that either the supervisor personally participated in the alleged unconstitutional conduct or that there is a

"causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003). To establish a causal connection, a plaintiff must plead facts that plausibly show a causal relationship in one of three ways: (1) the supervisor had notice of a widespread history of abuse which he neglected to correct, (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, or (3) the facts support the inference that the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Gonzalez* 325 F.3d at 1234-35 (citations omitted).

"While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how *overt acts* of the defendant caused a legal wrong." *Harris,* 2014 WL 4215576, at *4 (*citing Douglas v. Yates,* 535 F.3d 1316, 1322 (11th Cir. 2008)(citation omitted)(emphasis added). Because Plaintiff offers no proof causally connecting Defendants Meyers, Howard and Fails to the alleged wrongful acts of Defendant Whittle, and because Plaintiff fails to show how Defendants directed Whittle to act unlawfully, or knew that she would,

his claims for supervisory lack minimal particularity and thus fail to allege a constitutional violation. Furthermore, Plaintiff wholly fails to identify how they personally participated in Defendant Whittle's alleged use of excessive force, therefore requiring this Court to dismiss Plaintiff's clearly baseless claims for supervisory liability as frivolous pursuant to § 1915(e)(2)(B). *See Harris,* 2014 WL 4215576, at *4 (M.D.Ga. Aug. 25, 2014).

## B. Due Process Claims

Plaintiff also alleges that Defendants Meyers, Howard and Fails' denial of his "right to speak to I&I investigators" about the incident amounts to a due process violation. The Court disagrees.

Plaintiff's due process claims against Defendants Meyers, Howard and Fails fail to implicate any constitutional right to which Plaintiff is entitled. "The failure to properly investigate an inmate's complaint does not rise to the level of a separate constitutional violation." *Gillis v. Giles,* 2012 WL 6061800, at *1 (M.D.Ala. Oct. 31, 2012). Inmates simply do not enjoy a constitutional right to an investigation of any kind by government officials. *Id.* (*citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 196 (1989)("The Due Process Clause generally confers no affirmative right

to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual")).

With that, the Court concludes that Defendants' actions do not rise to the level of a constitutional violation, and therefore, provide no basis for relief in this § 1983 action.  Plaintiff's due process claims against Defendants Meyers, Howard and Fails are clearly baseless and due to be dismissed as frivolous pursuant to § 1915(e)(2()(B)(i).  *Gillis,* 2012 WL 60601800, at *1.

### C. Eighth Amendment Claims

#### a. Excessive Force

Whether an Eighth Amendment constitutional violation occurred "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline[,] or [applied] maliciously and sadistically for the very purpose of causing harm."  *Harris,* 2014 WL 4215576, at *4 (*citing Hudson v. McMillian,* 503 U.S. 1, 6 (1992)(citation and quotation marks omitted).  Liberally construing Plaintiff's Complaint in the light most favorable to him, it is found that Plaintiff has alleged colorable Eighth Amendment claims of excessive force against Defendants Whittle, Franklin, and Ezell.  Thus, these claims will be allowed to proceed.

b. Medical Care

As set out above, Plaintiff alleges Defendants violated his rights under the Eighth Amendment by being negligent and providing him with denied, delayed and/or inadequate medical care pertaining to his injuries allegedly received from Defendants Whittle, Franklin and Ezell.

Because Plaintiff's medical care claim is so intertwined with his claims for excessive force, and because the Court cannot measure the level of injury against the level of care provided to Plaintiff without a response from Defendants,[2] the Court finds Plaintiff's medical care claim against Defendant Ezell to be eligible for process.

c. Conditions of Confinement: Overflowing Toilet

---

[2] In responding to the remaining excessive force and medical care claims in Plaintiff's Complaint, Defendants are **ORDERED** to submit relevant medical records pertaining to those allegations. The medical records are to be submitted in chronological order with some form of logical and labeled pagination, which is to be referenced throughout the response. *See* THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION (Columbia Law Review Ass'n et al., eds., 19th ed. 2010, Bluepages B7.1.2)("Pincites are particularly important when citing court documents. Give as precise a reference as practicable to the cited document, such as to the page and line on which the material appears . . . ."); *see also* SD ALA LR 5.5(c)(similarly, "if discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response").

Plaintiff complains about the conditions of his confinement due to his and another cell's toilet overflowing in his cell for five and a half hours on June 25, 2014. (Doc. 1 at 4). Plaintiff states he notified the A-Night Shift on several occasions, but they ignored the "raw sewage" situation and failed to provide him with "cleaning chemicals and utensils to properly sanitize [his] cell." (*Id.* at 4-5). However, Plaintiff later admits that he received cleaning supplies to clean his cell. (*Id.* at 10).

In order to prevail on an Eighth Amendment claim alleging inhumane conditions of confinement, an inmate must make both an objective and subjective showing. The objective showing requires the Court to look at the "contemporary standard of decency" to determine whether the challenged conditions resulted in a deprivation of the "minimal civilized measures of life's necessitates" or "basic human needs." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim," "[b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society[.]'" *Sturdivant v. Lovette,* 2009 WL 3415368, at *6-7 (S.D.Ala. Oct. 20, 2009)(*citing Hudson v. McMillian,* 503 U.S. 1, 9 (1992)

(citations omitted).  "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter,* 501 U.S. 294, 305 (1991).

The subjective component requires that the prison official have been "deliberate[ly] indifferen[t]" to a substantial risk of serious harm. *Farmer,* 511 U.S. at 828-29.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Moreover, "[a] plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1028 (11th Cir.2001).

Liberally construing his Complaint in the light most favorable to him, the Court finds Plaintiff's lamentations to be clearly baseless, and thus, frivolous.  *See Harris, supra* p. 2.  As to the objective seriousness of the claimed conditions of confinement, the Court notes that, "while chronic exposure to human waste may give rise to a colorable Eighth Amendment claim, 'where exposure to such

waste is intermittent or limited to a matter of hours, courts normally will not entertain such actions.'" *Torres v. Cormier,* 2012 WL 5330980 (D.Vt. Sept. 19, 2012) (*citing Ortiz v. Department of Corrections,* 2011 WL 2638137, at *7 (S.D.N.Y. April 29, 2011), *adopted in full,* 2011 WL 2638140 (S.D.N.Y. July 5, 2011). Despite the unpleasantness of Plaintiff's overall conditions, the Court finds he was not deprived of any basic human needs and thus fails to meet the objective component of his conditions of confinement claim.

Since the Court found that Plaintiff was not deprived of any basic human needs, it follows that Defendants cannot be held liable for disregarding a need that Plaintiff was not deprived of, as the subjective element requires. Furthermore, Plaintiff fails to identify how any named Defendant disregarded the excessive risk of inmate health or safety that the overflowing toilet may have created. For instance, Plaintiff does not indicate that he had any sort of cut, wound, or abrasion on his hands or feet that may become infected as a result of the "raw sewage" exposure. More importantly, though, is the fact that Plaintiff was given cleaning supplies to cleanse his cell of the "raw sewage" thereby alleviating any question that Defendants disregarded a substantial risk of serious harm.

As well, "[i]nmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988)(finding no Eighth Amendment violation when an inmate stayed twenty-eight days in a filthy, roach-infested cell without toilet paper for five days and without soap, a toothbrush and toothpaste for ten days). Similarly, this Circuit previously found that having to use a toilet which lacks proper water pressure and occasionally overflows is unpleasant but not necessarily unconstitutional. *Alfred v. Bryant,* 378 F.App'x 977, 980 (11th Cir. 2010)(*citing Smith v. Copeland,* 87 F.3d 265, 268-69 (8th Cir. 1996)(court rejected Eighth Amendment claim based on a toilet that overflowed in the prisoner's cell for four days, as not every overflowed toilet in a prison amounts to cruel and unusual punishment). Though the conditions to which Plaintiff was subjected for five and a half hours were likely unpleasant, and perhaps even harsh, Plaintiff has not described permanent conditions of confinement which involve the wanton and unnecessary infliction of pain. *Cottingham v. Brown,* 2013 WL 980309 (N.D.Ala. Jan. 30, 2013).

Additionally, any unsanitary conditions caused by the toilet overflowing were mitigated by the provision of

cleaning supplies to Plaintiff. (Doc. 1 at 10). Even when construed liberally and read in the light most favorable to Plaintiff, the factual allegations in Plaintiff's Complaint do not describe the sort of "extreme" deprivation that an Eighth Amendment claim demands. *See Hudson v. McMillian,* 503 U.S. 1, 9, (1992). There is nothing in Plaintiff's Complaint to suggest that the conditions described posed an unreasonable risk of serious damage to Plaintiff's health or offended the contemporary standards of decency. *See e.g., Alfred v. Bryant,* 378 F. App'x 977, 980 (11th Cir.2010).

Lastly, even if Plaintiff had adequately pled a claim for relief, the Complaint does not allege that Plaintiff suffered any physical injury as a result of being confined under these conditions. With the absence of a physical injury, Plaintiff is precluded from recovering compensatory or punitive damages for those conditions. *See* 42 U.S.C. § 1997e(e); *Al-Amin v. Smith,* 637 F.3d 1192, 1999 (11th Cir. 2011). For these reasons, Plaintiff's claim regarding the conditions of his confinement are clearly baseless and due to be dismissed as frivolous pursuant to § 1915(e)(2)(B)(i); *see also Harris, supra* p. 2.

III. Conclusion

19

Based on the foregoing, the Court recommends that the following of Plaintiff's claims are due to be dismissed without prejudice as frivolous pursuant to §§ 1915A and 1915(e)(2)(B)(i) prior to service: the Eighth Amendment conditions of confinement claim against Defendant Whittle; the supervisory liability claims against Defendants Meyers, Howard and Fails; as well as the due process claims against Defendants Meyers, Howard and Fails. Plaintiff's claims for delayed, denied or inadequate medical care against Defendant Ezell and excessive force claims against Defendants Whittle, Franklin and Ezell are due to be served and proceed onward. Once this Report and Recommendation is ruled upon by the district judge, the Clerk is then **DIRECTED** to serve Defendants Whittle, Franklin and Ezell on Plaintiff's medical care and excessive force claims.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. In order to be

specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 7th day of October, 2014.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE