IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ZACHERY WILSON,                    :
        Plaintiff,                 :
                                   :
                                   :
vs.                                :        CIVIL ACTION 14-337-CB-M
                                   :
EMILY WHITTLE, *et al.*,           :
        Defendants.                :
                                   :

REPORT AND RECOMMENDATION

This action under 42 U.S.C. § 1983 brought by an
Alabama prison inmate, Zachery Wilson, proceeding *pro se*
and *in forma pauperis,* was referred to the undersigned
pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
72.2(c)(4), and is now before the Court on Plaintiff's
Complaint (Doc. 1), Defendants' Answer and Special Report,
(Docs. 22, 23), which the Court converted into a Motion for
Summary Judgment.  (Doc. 27).  After careful consideration
of the relevant pleadings and motion, and Plaintiff's
eyewitness statement, it is recommended that Defendants'
Motion for Summary Judgment be granted, and Plaintiff's
Eighth Amendment claims regarding excessive force and
inadequate medical care be dismissed with prejudice.

I.   Fact and Proceedings

Plaintiff filed his § 1983 Complaint on July 21, 2014,
alleging claims for Eighth Amendment conditions of

confinement, excessive force, medical care violations, supervisory liability, and Fourteenth Amendment due process violations.  The claims for conditions of confinement, supervisory liability and due process were previously dismissed without prejudice as frivolous pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(i), and process was thereafter issued on his excessive force and medical care claims.  Those excessive force claims against Defendants Whittle, Franklin and Ezell, and the delayed, denied or inadequate medical care claim against Defendant Ezell have been fully briefed, and are ripe for consideration.  Though the factual allegations were thoroughly set out in the previous report and recommendation (Doc. 7), the relevant facts are recapped below.

The Court notes that, with their Special Report, Defendants submitted two videos of the incidents in question, which proved to be highly relevant in the analysis herein.  The Court will consider Plaintiff's version of the facts in the light most favorable to him up to the point in time where the videos begin.  Thereafter, the Court will rely on the videos for a factual depiction, as the videos show exactly how Plaintiff's own insubordinate, indignant and insulting behavior caused the situation and injuries for which he complains.

Plaintiff's complaints stem from the six-hour period of 12:30 a.m. until 6:00 a.m., when the toilet in his segregation cell began to overflow "off and on with 'FECES' water, together with the cell toilet above Plaintiff's cell!" (Doc. 1 at 4).  Plaintiff notified a guard of the problem, and asked for "cleaning chemicals and utensils to properly sanitize [his] cell of the 'raw sewage.'" (*Id.* at 8).  In the meantime, Officer Leggett (who is not a named defendant) opened the tray door to Plaintiff's cell "to give Plaintiff a well need [sic] breath of fresh air!" (*Id.*).  Officer Leggett left Plaintiff's cell to retrieve a mop, but while he was gone, and while the tray door was open, Plaintiff tied socks (or some other type of fabric in strips) around the hinges of the tray door so the tray door could not be closed and latched.  (Doc. 23 at 4).  Officer Leggett gave Plaintiff several orders to remove the socks, but he refused.  (*Id.*).  Officer Leggett informed Defendant Whittle about Plaintiff's refusal to remove the socks, and the two of them returned to Plaintiff's cell to address the problem.  (*Id*).  Defendant Whittle informed Plaintiff that she would notify maintenance of the issue when they arrived at work, but that she was going to remove the socks Plaintiff had tied around the tray door, and close the tray door until they arrived.  With his hands and arms sticking

3

out of the tray slot, Plaintiff became irate yelling, "You not removing sh*t!"  (Doc. 23-7 at 2).

The first video begins here, with Defendant Whittle approaching Plaintiff's cell with "the cut down tool," which is a small handheld tool with a hook-shaped end that presumably has a cutting edge.  As Defendant Whittle tried to cut the sock off the tray door hinges, Plaintiff stuck his hands and arms in her way, deliberately placing his hands and arms in contact with the cut down tool.  Defendant Whittle repeatedly, but respectfully, instructed Plaintiff to "move your hands, move your arms.  It's going to cut your hands."  Plaintiff refused, and instead continued to place his hands and arms over the top of the hinges, and then stuck his fingers underneath the tray door so Defendant Whittle could not cut the socks from the bottom.  Plaintiff then started yelling, "you gonna [sic] cut me!"  Plaintiff slapped Defendant Whittle's hand as she tried to continue cutting the sock, and he knocked a canister of SABRE red chemical agent from her hand and on to the floor.  Defendant Whittle, without raising her voice or changing her tone, informed Plaintiff that he had just assaulted her and that it was recorded on the video camera.  Plaintiff became extremely hostile yelling at Defendant Whittle saying, "you ain't [sic] supposed to be around me

any g****** way! I done [sic] told you man.  Look at all
this d*mn sh*t water.  That ain't [sic] no mother-f*cking
assault!  You already mother-f*cking cut me man, you cut me
twice!"  By this point, Defendant Whittle successfully
removed the sock from one hinge; only one hinge still had a
sock tied to it, and Plaintiff would not move his arm from
across it.  Defendant Whittle continued to urge Plaintiff
to move his arm, but Plaintiff became even more irate
toward Officer Leggett who was nearby and filming the
altercation.  Plaintiff started pointing at Officer Leggett
and yelling at him saying, "Hey Leggett.  What did I tell
you?  What did I tell you man?  All this mother-f*cking
sh*t.  Every time the man flushes his g****** toilet, man,
this sh*t is coming up out [sic] my g****** toilet, man!"

    Defendant Whittle told Plaintiff that the plumbing
issue had nothing to do with his tray hole, and Plaintiff
belligerently yelled, "yeah it do [sic]!  Yeah the f*ck it
do, man! . . . Hey, hey, listen!  I done threatened this
female twice.  Get this female from around me man!  Captain
Howard told me she wasn't supposed to be around me!  She
done cut my mother-f*cking hand with this g******* thing
right here!"  This malicious banter continued on until
Defendant Whittle was finally able to remove all hindrances
from the tray door hinges.

Though the socks were removed, Plaintiff refused to move his arms from tray hole so the door could be closed. Defendant Whittle continued asking Plaintiff to move his arms, but Plaintiff continued to exhibit hostile behavior by pulling a shampoo bottle out and trying to squirt what was presumed to be shampoo on Defendant Whittle.  Defendant Whittle remained calm and continued to tell Plaintiff to move his arm, while gently pushing his hands out of the way.  Plaintiff started slapping at Defendant Whittle's hands, so Defendant Whittle administered a two (2) second burst of the chemical agent to Plaintiff's facial area. The chemical agent hardly fazed Plaintiff as he began to taunt Defendant Whittle saying, "hit that arm!  Hit it!" Defendant Whittel issued another burst of the chemical agent and waited for Plaintiff to move his arm, which he finally did.  Defendant closed the tray door and exited the cell area.

Despite Plaintiff's allegations that Defendant Whittle "maliciously whittled, snipped, and/or lacerated" him (Doc. 30 at 4), the Court notes that at no point during the video is there visible blood on Plaintiff's arms or hands, or the tray door where his arms and hands were resting.  An Incident Report was filed, and an Investigative Report was conducted by Captain Darryl Fails, each of which directly

contradict Plaintiff's version of the facts, indicating
that Plaintiff's own indignant, antagonistic, and self-
destructive behaviors caused any injury he may have
received; and that Defendant Whittle "only used the amount
of force [necessary] to gain control of the situation and
get inmate Wilson to comply by utilizing her chemical
agent.  The force used is justified."  (Docs. 23-1, -2).

According to the Incident Report, and approximately
twenty minutes after Defendant Whittle exited Plaintiff's
cell area, Plaintiff was escorted by Defendant Franklin and
Officer Madison to the health care unit for a medical
assessment and decontamination.  (Doc. 1 at 9).  Plaintiff
contends that on the way to the health care unit ("HCU"),
Defendant Franklin cuffed Plaintiff to the back, then
"started grabbing the chains of the handcuffs, yanking them
upward very aggressively, almost over [Plaintiff's head]."
(*Id.*).  Plaintiff states that he immediately felt agonizing
and sharp pain to his right wrist as Defendant Franklin
told Plaintiff that he should "beat yo maf***in ass chump!"
(*Id.* at 10).

Once in the HCU around 6:58 a.m., the nurse noted on
Plaintiff's body chart that he was "awake, alert, agitated
[and] yelling at DOC."  (Doc. 23-6 at 2).  The nurse also
noted that Plaintiff presented with a "superficial

laceration to [left] middle finger. . . . No other injuries
noted." (*Id.*).  Plaintiff was released to DOC with
instructions to return to HCU if other problems occurred.
(*Id.*).  By this time, maintenance was in Plaintiff's cell
repairing the plumbing, so Plaintiff was escorted to the
shower area for holding until the maintenance was complete.
(Doc. 23-4 at 1).  At 8:05 a.m., Officer Leggett observed
Plaintiff "kick out the glass of the shower door. . . [and]
stepped through the glass of out of the shower."  (*Id.*).
Plaintiff was immediately ordered to stop kicking the glass
and to step back in the shower, which he did.  (*Id.*).
Around 8:10 a.m., Plaintiff was verbally reprimanded for
his behavior, and escorted back to his assigned cell (*Id.*),
and "given cleaning supplies and utensils to properly
sanitize his cell from the raw sewage."  (Doc. 1 at 9).

     On the same day, around 9:25 a.m., Plaintiff
returned to the HCU presenting with a cut on his arm.  (*Id.*
at 3).  The nurse's notes reflect a "superficial abrasion
noted to [right] elbow apprx. ½ cm long.  Area cleansed and
covered with band-aid.  [No] further need voiced."  (*Id*).
Plaintiff was released to DOC with instructions to return
to HCU if needed.  (*Id.*).  Later, at 11:46 a.m., Plaintiff
returned to the HCU complaining that "it wasn't like that
earlier."  (*Id.* at 4).  The notes from the nurse's physical

exam reflect Plaintiff as "ambulatory to HCU with [a] steady gait, . . . superficial laceration remains to [left] middle finger . . . shallow laceration remains to [right] elbow. Now [complains of] [right] wrist pain. No swelling, redness nor [sic] deformity noted." (*Id.*). Plaintiff was released from HCU, but again returned that evening around 8:45 p.m. saying, "They didn't give me no [sic] pain meds for my wrist. I'm in pain." (*Id.* at 5). The nurse's notes to this complaint indicate that no new trauma was presented at this time and that the patient complains of pain to hand from an old injury from October 2013. (*Id.*). Plaintiff was again released to DOC, with no special instructions to return to the HCU.

At 4:30 p.m., on that same day and during the evening meal, Defendant Whittle was notified that more inmates, including Plaintiff, were refusing to move their arms from their tray doors so the officers could secure the cell doors. (Doc. 23-4 at 1). Defendant Whittle completed feeding the evening meal, and at 5:40 p.m., reported to the segregation annex to secure those open tray doors. (*Id.*). Before approaching any of the inmates refusing to remove their arms from the tray doors, Defendant Whittle instructed Officer Madison to begin recording as Defendant Whittle approached each inmate. (*Id.*).

Once the other inmates' tray doors were secured, at
least one of which required the use of Defendant Whittle's
chemical agent, Whittle approached Plaintiff's cell and saw
that his arms were again impeding the closure of the tray
door.  (*Id.*).  This time, Whittle is operating the video
camera as Officer Ezell ordered Plaintiff several times to
remove his arm from the tray door.  (*Id.*).  Plaintiff
refused to comply, and Officer Ezell administered a two-
second burst of his chemical agent to Plaintiff's face.
(*Id.*).  Plaintiff finally removed his arms and his tray
door was secured.  (*Id.*).  At 8:45 p.m., after the relevant
authorities were notified of the events, Warden Meyers and
Captain Fails escorted Plaintiff to the HCU for a medical
assessment and decontamination.  (*Id.* at 2).  For evidence
purposes, Defendant Whittle also took pictures of Plaintiff
and instructed him to submit a written statement for
evidence purposes.  (*Id.*).  Captain Fails conducted an
Investigative Report concluding "the force used [was]
justified [and] only the amount of force necessary was used
to get each inmate to comply."  (Doc. 23-5 at 1).

The video of this incident supports Defendants'
written record as well.  In fact, the video clearly shows
Officer Ezell respectfully and considerately ordering
Plaintiff to remove his arms, but Plaintiff continued to

refuse, resulting in Officer Ezell's use of his chemical agent on Plaintiff.  The video also shows Plaintiff's right elbow which he claims was "maliciously whittled, snipped and/or lacerated" by Defendant Whittle, and which, with such severe sounding wounds, would have extensive bandaging.  However, it is plain to see that only a medium-sized regular band-aid was placed on Plaintiff's elbow by the nurse, as opposed to any stitches or gauze and medical tape which may have been used to mend and bandage a larger, more serious wound.

Plaintiff's Complaint and Response to Defendants' Motion is a twenty-four-page and thirty-page diatribe of verbiage scattered with randomly placed quotation marks, underlinings, parentheticals and words in all-caps.  (Docs. 1, 30).  Without rehashing Plaintiff's verbose rants, the Court has interpreted Plaintiff's submissions to allege Eighth Amendment claims of excessive force against Defendants Whittle, Franklin and Ezell; and Eighth Amendment claims of inadequate, delayed or denied medical care against Defendants Whittle, Ezell and Franklin. (*Id.*).  Plaintiff submits disciplinary reports for each incident and an affidavit from inmate Gerard McCree to support his position.  (Doc. 6).

For relief, Plaintiff requests "$100,000 in punitive damages from Whittle. . . .  Punitive damages of 75,000 from Ezell and Franklin.  $30,000 in compensatory Damages from each individual, $10,000 in emotional damages from each individual."  (Doc. 1 at 7).

Defendants deny Plaintiff's allegations with affidavits, incident reports, medical records and two videos documenting each altercation.  As previously noted, the videos depict the events giving rise to Plaintiff's allegations, discrediting them entirely, and supporting Defendants' version of what occurred.

## II. Discussion

### a. Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment.  FED.R.CIV.P. 56(a).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the evidence produced by "the

nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED.R.CIV.P. 56(e).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Id. Additionally, it is well settled that a conclusion cannot be taken as true.  Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).  Conclusory allegations based on subjective beliefs

are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno,* 115 F.3d 1555, 1564 n. 6 (11th Cir.1997); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment). Therefore, "[s]ummary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 647 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Brown v. Quality Corr. Healthcare, Inc.* 2014 WL 2916747, at *2-*3 (M.D.Ala. June 26, 2014)(*citing Beard v. Banks,* 548 U.S. 521, 525 (2006)(citation omitted). Thus, the

plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Furthermore, where the record before a court directly contradicts a plaintiff's version of the facts, the Court must not adopt the plaintiff's version, and instead rely on the creditable version of those facts in making its decision.  See Scott v. Harris, 550 U.S. 372, 380 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); Vicks v. Knight, 380 Fed. Appx. 847, 851 (11th Cir. 2010)(unpublished).

III. Excessive Force and Failure to Protect

As stated above, Plaintiff seeks redress for alleged injuries he received from Defendants Whittle and Ezell when they allegedly used excessive force on him while attempting to close the cell tray door, and from Defendant Franklin when he used excessive force by pulling Plaintiff's rear-handcuffed arms up over his head as Franklin escorted him to the HCU.  Plaintiff also claims Defendant Franklin failed to protect him from the excessive force used on him

by Defendant Whittle. (Docs. 1, 30).  Section 1983 provides

in pertinent part:

> Every  person  who,  under  color  of  any
> statute,  ordinance,  regulation,  custom,  or
> usage,  of  any  State  or  Territory  or  the
> District  of  Columbia,  subjects,  or  causes  to
> be  subjected,  any  citizen  of  the  United
> States  or  other  person  within  the
> jurisdiction  thereof  to  the  deprivation  of
> any  rights,  privileges,  or  immunities
> secured  by  the  Constitution  and  laws,  shall
> be  liable  to  the  party  injured  in  an  action
> at  law,  suit  in  equity,  or  other  proper
> proceeding  for  redress . . . .

42 U.S.C. § 1983 (1994).  Additionally, the Eighth

Amendment provides that, "[e]xcessive bail shall not be

required, nor excessive fines imposed, nor cruel and

unusual punishments inflicted." U.S. Const. amend. VIII.

The Eighth Amendment's proscription against cruel and

unusual punishment prohibits prison officials from

exhibiting deliberate indifference to a substantial risk of

serious harm to an inmate. *Farmer v. Brennan*, 511 U.S.

825, 828 (1994).

In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,

489 U.S. 189 (1989), the Supreme Court summarized a state's

constitutional responsibilities with regard to inmates:

> [W]hen  the  State  takes  a  person  into
> its  custody  and  holds  him  there  against
> his  will,  the  Constitution  imposes  upon
> it  a  corresponding  duty  to  assume  some
> responsibility  for  his  safety  and
> general  well-being . . . . The

16

> rationale for this principle is simple
> enough: when the State by the
> affirmative exercise of its power so
> restrains an individual's liberty that
> it renders him unable to care for
> himself, and at the same time fails to
> provide for his basic human needs –
> *e.g.*, food, clothing, shelter, medical
> care, and reasonable safety – it
> transgresses the substantive limits on
> state action set by the Eighth
> Amendment and the Due Process Clause.

*Id.* at 189-200 (citations omitted).

To establish a constitutional violation for excessive use of force, Plaintiff must first show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, meaning defendant's conduct "shocks the conscience," *Lumley v. City of Dade City, Fla.,* 327 F.3d 1186, 1196 (11th Cir. 2003), and, second, Plaintiff must show that "the officials act[ed] with a sufficiently culpable state of mind," *i.e.,* that they acted "maliciously and sadistically to cause harm." *Jacoby v. Mack*, 2014 WL 2435655, at *6 (S.D.Ala. May 30, 2014) (*citing Hudson v. McMillian,* 503 U.S. 1, 6-8 (1992)). A higher standard with a more culpable intent requirement is applied where a plaintiff claims the use of excessive force. *Flowers v. Bennett,* 135 F.Supp. 2d 1150, 1155 (N.D.Ala. Dec. 11, 2000). "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long

as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.' " *Skrtich v. Thornton,* 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers,* 475 U.S. 312, 320–21 (1986)).

Under *Whitley* and its progeny, the Supreme Court delineated factors used to determine whether there has been a violation of the Eighth Amendment in the prison security context: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered. *Hudson,* 503 U.S. at 7 (citing *Whitley,* 475 U.S. at 321).  While the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation."  *Id.; see also Hudson* at 10 (stating that blows causing bruising, swelling, loosened teeth and a cracked dental plate do not constitute a *de minimus* use of force).

a.  Defendant Whittle and the Hook Knife

Though Plaintiff claims Defendant Whittle intentionally, maliciously and sadistically "lacerated" his finger and arm with a "hook knife," the Court does not find

18

that Defendant Whittle acted in such a fashion, and

Plaintiff's claim of excessive force against her is due to

be dismissed with prejudice.  First, the video account of

the incident directly discredits and contradicts

Plaintiff's version of the facts, so the Court does not

accept as true Plaintiff's allegations in this instance.

Instead, it relies on the audio and video provided by

Defendants which depicts Plaintiff intentionally impeding

Defendant Whittle's attempts to secure his tray door.

Plaintiff intentionally created this situation by tying

socks around the hinges of his tray and placing his arms in

the tray hole slot and refusing to move them when ordered

to do so.  The video further portrays Defendant Whittle

attempting to avoid cutting Plaintiff's arms as she tried

to cut the socks away from the tray door.  Defendant

Whittle can also be heard, without anger or malice,

repeatedly asking Plaintiff to move his arms before she

attempted to remove the socks.  Based on the vide evidence,

the Court concludes that Defendant Whittle's conduct did

not "shock the conscience" as she tried to remove the socks

from the tray door.  *See Lumley v. City of Dade City, Fla.,*

327 F.3d 1186, 1196 (11th Cir. 2003).

Regardless of the video, though, the Court finds that

Plaintiff fails to meet his burden of proof on at least one

element of his excessive force claim.  As to the first objective element of an excessive force claim, the Court does not conclude, but will acknowledge that Defendant Whittle's actions *could* be viewed as rising to the level of a constitutional tort, even though Plaintiff does not provide sufficient proof of such.

The Court finds that Plaintiff also fails to meet his burden on the second, subjective element of his claim. Nowhere in his Complaint (Doc. 1), or Response to Defendants' Motion (Doc. 30), does Plaintiff provide any evidence indicating that Defendant Whittle acted "maliciously and sadistically to cause harm." *Jacoby, supra* p. 17.  Plaintiff does not indicate any sort of unnecessary or wanton infliction of pain was used to accomplish the closing of his tray door.  Rather, Plaintiff relies on his own assertions which are not substantially probative, but merely conclusory, and it is well settled that a conclusion cannot be taken as true.  *Ashcroft,* 556 U.S. 662, 678-79; *see also Leigh,* 212 F.3d 1210, 1217 ("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman,* 739 F.2d 553, 556-57 (a Plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment).

Regardless of Plaintiff's allegations being deemed conclusory, the Court reverts back to its reliance on the video, as the video indeed speaks for itself. It shows Defendant Whittle respectfully asking Plaintiff to move his arms so she can maintain the order and protocol of tray doors in the segregation unit. It shows her trying to avoid cutting Plaintiff's arms as he refused to move them from where she was cutting. The video also shows very little to no injury to Plaintiff's arms, and shows Plaintiff becoming increasingly disrespectful and hostile toward Whittle as she attempted to remove the socks.

Nowhere in the record is it demonstrated that Defendant Whittle engaged in "unnecessary and wanton infliction of pain is distinguished from punishment and defined as an "immediate coercive measure undertaken by a prison official, necessitated by a spontaneous violation of a prison rule or regulation." *Ort v. White,* 813 F.2d 318, 322 (11th Cir. 1987). Situations such as the one Plaintiff created dictates that prison officials, like Defendant Whittle, undertake immediate action to end the violation without the luxury of hindsight and reflection. *Id.* The final determination "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very

21

purpose of causing harm." *Id.*  The Court concludes that
Defendant Whittle did not act with malicious and sadistic
intent, but in a good faith effort to restore the security
of Plaintiff's cell.  Without anything more than conclusory
allegations, and with contradictory video evidence in the
record, Plaintiff has failed to make a showing sufficient
to establish the existence of the subjective element of his
excessive force claim, of which he would bear the burden of
proof at trial, and thus, his claim against Defendant
Whittle is due to be dismissed with prejudice.[1]

        b.  Defendant Ezell and the Chemical Agent

    The same § 1983 Eighth Amendment excessive force
analysis set out above regarding Defendant Whittle applies
to Defendant Ezell where Plaintiff claims that Ezell's use
of a chemical agent on him was excessive force.  The Court
finds that he likewise fails to meet his burden on the
second, subjective element.  At no point in Plaintiff's
ongoing rants does he submit any evidence that Defendant
Ezell acted with a malicious or sadistic intent to harm
Plaintiff beyond what was necessary to restore order.
Instead, the video again shows Defendant Ezell encouraging

---

        [1]  Because Plaintiff fails to meet the most basic
elements of his excessive force claim, the Court will not
engage in applying the five Whitley factors to Defendant
Whittle's conduct.

Plaintiff to move his arms from the tray hole, and when he refuses, Ezell sprays him with a two second burst of a chemical agent.  Without any indication to the contrary, the Court concludes that Defendant Ezell's actions do not "shock the conscience," and that he acted in good faith to restore the order of the segregation unit when he was forced to use his chemical agent on Plaintiff.  Because Plaintiff again fails to make a showing sufficient to establish the existence of the subjective element of his excessive force claim against Defendant Ezell on which he would carry the burden at trial, his claim should be dismissed with prejudice.

      c.  Defendant Franklin and the Failure to Protect;

Alleged Misuse of Handcuffs

Plaintiff contends that Defendant Franklin failed to protect him from Defendant Whittle's "maliciously cut[ting], and sadistically mac[ing] Plaintiff [] through [his] tray slot, and failing to make an endeavor to stop the assault."  (Doc. 30 at 10).  Plaintiff also alleges that, as Defendant Franklin was escorting him to the HCU, that Franklin "maliciously and sadistically misused the handcuffs after he applied the handcuffs to the rear . . . by 'yanking [his] arms upward, very aggressively, almost over Plaintiff's 'pate.'"  (*Id.* at 10-11).

Regarding the failure to protect allegation, the Court finds that Plaintiff fails to demonstrate that a genuine dispute of material fact exists wherein a reasonable jury could find in Plaintiff's favor.

The Eighth Amendment is only violated by a prison official's deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan,* 511 U.S. 825, 828 (1994). "An officer who is present at the scene [of an altercation,] and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." *Jacoby,* 2014 WL 2435655, at *10 (*citing Hadley v. Gutierrez,* 526 F.3d 1324, 1330 (11th Cir. 2008). But, it must also be true that the non-intervening officer was in a position to intervene yet failed to do so. *Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919, 924 (11th Cir. 2000). Therefore, if excessive force is not used, then an officer has no duty to intervene. *See Crenshaw v. Lister,* 556 F.3d 128, 1294 (11th Cir. 2009). With the finding above that neither Defendant Whittle nor Defendant Ezell used excessive force, in Franklin's presence or at all, then Defendant Franklin had no duty to protect from or intervene upon the situation as it played out with either Defendant Whittle or Ezell.

Furthermore, it is well-settled that "not every malevolent touch by a prison guard gives rise to federal cause of action." *Hudson,* 503 U.S. 1, 9. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* at 9 (citations omitted). Therefore, the Court concludes that Defendant Franklin had no duty to protect or intervene, and Plaintiff's claims of such are due to be dismissed with prejudice.

As for Plaintiff's claims that Defendant Franklin engaged in excessive force against him by yanking his rear-cuffed arms over his head, the Court likewise finds those allegations fail as a matter of law. Again, applying the objective and subjective elements of an excessive force claim, and its corresponding analysis set out above, to Plaintiff's assertions, it is clear, based on Franklin's affidavit and Plaintiff's medical charts, that such yanking of handcuffs did not occur. Defendant Franklin expressly states in his affidavit that he did not grab the chain of the handcuffs and yank them over Plaintiff's head, and that he has no knowledge of the use of excessive force against Plaintiff on any occasion. (Doc. 23-8). Furthermore, Plaintiff's body charts do not indicate any sort of injury associated with yanking rear-cuffed arms over one's head.

If this action had occurred, Plaintiff presumably would have presented to the HCU with severe shoulder injuries, but instead, he only complained of cuts to his finger and elbow, and later a sore wrist, which the nurse noted stemmed from an older injury in October of 2013.  (Doc. 23-6 at 5).

Once again, Plaintiff relies upon his own assertions which are not substantially probative, or probative at all, but mere conclusions without supporting facts or law.  Such conclusory allegations cannot be taken as true, and as such, Plaintiff fails to make a showing sufficient to establish the existence of an element essential to his claim, and on which he bears the burden of proof at trial.  *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).  Plaintiff's claims against Defendant Franklin are due to be dismissed with prejudice as a matter of law.

IV.  Adequate Medical Care

To the extent Plaintiff claims he was delayed, denied or given inadequate medical care, the Court finds Plaintiff's unsubstantiated allegations to be conclusory, as there is nothing in the record indicating any delay, denial or inadequate medical care.  To prevail on a claim for inadequate medical care, an inmate must show that the

defendants acted with deliberate indifference to his
serious medical needs. *Estelle v. Gamble,* 429 U.S. 97
(1976).  In *Estelle,* the Supreme Court held that a prison
official's deliberate indifference to the serious medical
needs of a prisoner constitutes the unnecessary and wanton
infliction of pain proscribed by the Eighth Amendment.
*Estelle* at 104; *see also Campbell v. Sikes,* 169 F.3d 1353,
1363 (11th Cir. 1999)(stating "[t]he Eighth Amendment
prohibits prison officials from exhibiting deliberate
indifference to prisoners' serious medical needs").
"However, not every claim by a prisoner that he has not
received adequate medical treatment states a violation of
the Eighth Amendment." *McElligot v. Foley,* 182 F.3d 1248,
1254 (11th Cir. 1999)(citation omitted).  The inadvertent
or negligent failure to provide adequate medical care
cannot be said to constitute an unnecessary and wanton
infliction of pain. . . . Medical malpractice does not
become a constitutional violation merely because the victim
is a prisoner." *Estelle,* 429 U.S. 97, 105-06.  Thus, a
prisoner must allege acts or omissions sufficiently harmful
to evidence deliberate indifference to serious medical
needs. *Id.* at 106.

     The Eleventh Circuit delineated the objective and
subjective portions of an Eighth Amendment claim, which

must be met in order to prove an Eighth Amendment violation:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

*Sims v. Mashburn,* 25 F.3d 980, 983 (11th Cir. 1994)(*citing Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).  The objective component of the Eighth Amendment requires a plaintiff to demonstrate that an "objectively serious medical need" exists.  *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is "considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* (*citing Hill v. DeKalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994) overruled on other grounds in *Marsh v. Butler Cnty., Ala.,* 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001)(quotation marks omitted)).  "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm."  *Id.* (citations and quotation marks omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need. *Farrow,* 320 F.3d at 1243. "Deliberate indifference entails more than mere negligence. *Estelle,* 429 U.S. at 106; *Farmer v. Brennan,* 511 U.S. 825, 835 (1994). The Supreme Court held that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S., 825, 837-38 (emphasis added). However, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Therefore, "under *Estelle* and *Farmer,* deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow,* 320 F.3d 1235, 1246 (*citing McElligot,* 182 F.3d 1248, 1255)(stating that defendant must have subjective awareness of an "objectively serious need"

29

and that his response must constitute "an objectively insufficient response to that need")).

Applying the objective element to Plaintiff's allegations, the Court does not find that Plaintiff's injuries were an objectively serious medical need. That is, Plaintiff's "superficial abrasions" (Doc. 23-6 at 3), do not rise to the level of "physician mandated treatment" or wounds "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow,* 320 F.3d at 1243.

Based on the video evidence of each incident, as well as the body charts submitted by Defendants, the Court concludes that Plaintiff's injuries were "superficial abrasions," and therefore, not rising to the level of an objectively serious medical need as required by the objective element of his Eighth Amendment medical care claim. Thus, Plaintiff has failed to meet his burden on at least one element of his medical care claim, which he would be required to prove should this matter go before a jury. Without a genuine issue of material fact, Plaintiff's medical care claims as they relate to any and all Defendants should be dismissed with prejudice.

V.   Conclusion

Based on the forgoing, the Court concludes that Defendants Whittle, Franklin and Ezell are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, and that this action against these Defendants be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the

absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 29th day of April, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE